IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:24-cr-289-M-KS-14

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>WILLIAM FRANKLIN BEASLEY,<br><br>     Defendant. | **DEFENDANT BEASLEY'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO SEVER** |

Defendant Beasley respectfully requests that the Court sever him from all of the other Defendants for the following reasons.

With respect to all Co-Defendants, Mr. Beasley's case should be severed because continued joinder is unduly prejudicial to his right to a speedy trial. While every other Defendant has consented to the Government's repeated requests for extensions of time and delay of the trial, and in some cases requested delays of their own, Mr. Beasley has opposed any further delay and explicitly invoked his speedy trial rights. Courts within the Fourth Circuit and around the country have granted severance motions to protect a defendant's right to a speedy trial in these circumstances.

Specifically, as to Counts One, Two, Three, and Eight, Mr. Beasley should be severed from the Defendants named therein for two reasons. First, Mr. Beasley is improperly joined in these Counts. Under Rule 8, joinder of criminal defendants is only permitted when defendants engage in the same act or series of acts. Yet Mr. Beasley did not participate nor was otherwise involved in the separate acts of violence

charged in those Counts. Because Mr. Beasley did not engage in the same act, series of acts, or otherwise act pursuant to any common scheme or plan relating to those acts, these Defendants were misjoined and severance is mandatory. <u>Second</u>, even if joinder were somehow proper, continued joinder would be unduly prejudicial for similar reasons. The Defendants named in these four Counts are charged with entirely separate crimes that lack ***any*** connection to Mr. Beasley. There is no allegation of conspiracy, moreover. Where multiple defendants are charged with offenses in no way connected, and are tried together, they are prejudiced by that very fact, and thus entitled to relief under Rule 14.

## FACTUAL BACKGROUND

Mr. Beasley is charged in an eight-count, sixteen-defendant Indictment. DE 5. Most of the allegations in the Indictment have little or nothing to do with Mr. Beasley. The Indictment alleges that the Hells Angels Motorcycle Club is a racketeering enterprise, and that the various Defendants have engaged in different, often independent crimes to support that enterprise. There is ***no*** count charging a conspiracy. The charges against Mr. Beasley relate to a single incident—specifically, he is alleged to have joined in a fight with a rival motorcycle club in a Dairy Queen parking lot on July 22, 2023. This conduct is covered by Counts Six and Seven respectively charging attempted murder and assault with a deadly weapon as violent crimes in aid of racketeering.

Counts One, Two, and Three concern unrelated conduct. In these three Counts, an entirely different set of Defendants is alleged to have murdered J.P., used a firearm in furtherance of that crime, and to have acted as accessories after the fact.

2

This conduct is alleged to have taken place on January 1, 2023, over seven months prior to the Dairy Queen fight involving Mr. Beasley. There is no apparent overlap of Defendants, victims, locations, crimes charged, or timing. Again, no conspiracy is alleged. In other words, the only connection between Mr. Beasley's conduct and the conduct alleged in Counts One through Three is that it all happened in North Carolina, allegedly carried out by individuals associated with the Hells Angels Motorcycle Club.

Count Eight is also distinct from the charges against Mr. Beasley. A single Defendant, Mr. Robarge, is alleged to have harassed an unnamed witness. Again, this conduct allegedly took place on a different day than the conduct involving Mr. Beasley. The Indictment does not allege that Mr. Beasley and Mr. Robarge ever aided and abetted each other, conspired, or coordinated in any way. Mr. Robarge is not charged in any Count that also charges Mr. Beasley. There is no apparent overlap of Defendants, victims, locations, crimes charged, or timing. Again, it seems that the only connection between Mr. Beasley's conduct and the conduct alleged in Count Eight is that it all happened in North Carolina, allegedly carried out by individuals associated with the Hells Angels Motorcycle Club.

## PROCEDURAL HISTORY

Mr. Beasley was indicted and arrested on October 1 and 8, 2024, respectively. DE 5 (Indictment); DE 85 (arrest).

On October 15, 2024, Mr. Beasley appeared before Magistrate Judge Numbers for a detention hearing. The Government presented multiple witnesses as well as video evidence. Even though Mr. Beasley and the other participants in the fight were

identified and contacted by the police within hours, the Government witnesses testified about a multi-year, multi-agency investigation into the incident. Mr. Beasley was ordered detained pending trial. DE 149 (minute entry); DE 165 (order).

In its first request for an extension of this Court's deadlines, filed on October 18, 2024, the Government represented that it "anticipates that shortly it will be filing a motion regarding the setting of pre-trial scheduling matters." DE 206 ¶ 7. Based on that understanding, Mr. Beasley consented to and the Court granted the first sought extension, requiring pretrial conferences to be conducted by November 4, 2024, and requiring the submission of a proposed pretrial schedule on or before December 2, 2024. DE 212.

Meanwhile, Mr. Beasley appealed his pretrial detention to this Court on October 23, 2024. DE 227. After a hearing, the Court affirmed the detention order. DE 242.

On November 4, 2024, the Government requested a second extension to the Court's pretrial conference deadline, which was granted. DE 244 (second extension request); DE 245 (Order).

On December 2, 2024, the Government again sought a lengthy extension of 60 days to propose a pretrial schedule, contrary to its earlier statement that a pretrial schedule would be proposed "shortly." DE 269. Mr. Beasley was the sole defendant that opposed the Government's request. DE 270. The Court granted the Government's motion. DE 272. In its Order, however, the Court invited Mr. Beasley to file an additional motion seeking reconsideration of the Court's prior detention order. DE 272.

On December 16, 2024, contemporaneous with the filing of the instant motion and in response to the Court's invitation, Mr. Beasley filed a Motion for Reconsideration of Pretrial Detention. DE 274.

<u>**ARGUMENT**</u>

Under the Federal Rules governing joinder and severance, Mr. Beasley's case should be severed. He should be allowed to individually and immediately proceed to trial on Counts Six and Seven—the lone charges he faces.

**I.    To Avoid Unfair Prejudice to His Speedy Trial Rights, Mr. Beasley Should Be Severed from His Co-Defendants Under Rule 14.**

Under Rule 14(a), the court may order severance or other relief when joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14(a). In determining whether to grant a Rule 14 motion, the court must balance potential prejudice of the defendants against the desire to conserve judicial resources that would be wasted by "duplicative trials involving substantially similar proof." *United States v. Downey*, No. 1:09CR109-1, 2009 WL 10681814, at *2 (M.D.N.C. Aug. 13, 2009). It has been the consistent position of the Fourth Circuit that, while the Rule "places the grant or denial of a motion for severance in the sound discretion of the trial court, if a substantial degree of prejudice springs from a joint trial, a severance is mandated." *United States v. Truslow*, 530 F.2d 257, 261 (4th Cir. 1975).

Courts often grant severance under Rule 14 when continued joinder threatens a defendant's right to a speedy trial. *See, e.g.*, *United States v. Robinson*, 55 F.4th 390, 397 (4th Cir. 2022) (noting that the district court had severed the defendants, even though the Speedy Trial Act had not been violated, because it "worried that waiting for [co-defendant's] counsel to be prepared for trial risked doing so"); *United*

*States v. Byrd*, 466 F. Supp. 2d 550, 553 (S.D.N.Y. 2006) (severing defendant after government requested several month delay in racketeering case because such delay was "unreasonable and totally at variance with the fundamental purposes of the Speedy Trial Act" when defendant was being held without bail and had invoked speedy trial rights); *United States v. Santiago-Mesinas*, No. 18-CR-00209-CMA-11, 2018 WL 4899076, at *7 (D. Colo. Oct. 9, 2018) (severing defendant who opposed government's request for delay because "a joint trial would compromise a specific trial right—[d]efendant's right to a speedy trial"); *United States v. Baca*, No. CR 16-1613 JB, 2016 WL 6404772, at *31 (D.N.M. Oct. 20, 2016) (ordering severance and holding that "a joint trial would compromise [defendant's] right to a speedy trial").

Here, to avoid prejudicing Mr. Beasley's right to a speedy trial, he should be severed from his Co-Defendants. While Mr. Beasley has asserted his speedy trial rights, his Co-Defendants have agreed to the Government's extension requests, such that months have now passed since Mr. Beasley's arrest without a pretrial schedule, much less a trial date. Continued joinder thus prejudices Mr. Beasley's right to a speedy trial and unnecessarily forces him to spend a prolonged period in pretrial detention. This prejudice outweighs the competing interest in judicial economy.

These concerns are particularly heightened in light of the nature of this specific case. No doubt, in a case with sixteen defendants, there will be occasion for delay prior to a joint trial as the various other parties negotiate the terms of any plea deals, wrestle with pretrial motions, and prepare for trial. But unlike the other Defendants, Mr. Beasley has no interest in delaying his trial. While Mr. Beasley has asserted his speedy trial rights and opposed the Government's requests for delay, all of the other

named Defendants have elected to consent to these delays. *See* DE 269 (Only Mr. Beasley opposed the Government's request for an extension of time); DE 270 (Mr. Beasley asserts his speedy trial rights).

Moreover, the need to avoid Mr. Beasley's prolonged pretrial detention is particularly acute given his personal characteristics. As this Court is already aware, and for the reasons described in the Motion for Reconsideration of the Detention Order filed contemporaneously, Mr. Beasley is an elderly combat veteran suffering from severe, life-threatening health issues. Despite this Court's orders, he is still not being provided with all of his necessary care. As a result, in the few short weeks since he was last before this Court, Mr. Beasley's mental and physical condition has dramatically deteriorated.

Thus, the prejudice to Mr. Beasley's right to a speedy trial and the practical consequences associated with prolonged detention far outweigh any harm to judicial economy that a separate trial entails. To be sure, conservation of judicial resources is an important consideration. In this situation, however, "considerations of judicial economy do not weigh significantly against a severance." *United States v. Downey*, No. 1:09CR109-1, 2009 WL 10681814, at *3 (M.D.N.C. Aug. 13, 2009); *see also United States v. Byrd*, 466 F. Supp. 2d 550, 553 (S.D.N.Y. 2006) ("[I[t cannot be that Congress intended that the mere happenstance of being indicted along with someone [whose case is more complex] means that a defendant will not be afforded the important and substantial rights provided under the Speedy Trial Act.").

Accordingly, Mr. Beasley's case should be severed from his Co-Defendants, and he should be permitted to proceed to a speedy trial.

## II. Mr. Beasley Should Be Severed from the Co-Defendants Charged with Committing Completely Unrelated Acts.

In addition to speedy trial concerns, Mr. Beasley should be severed from the Defendants specifically named in Counts One, Two, Three, and Eight because these Defendants were improperly joined and, moreover, continued joinder would be unduly prejudicial to Mr. Beasley's right to a fair trial.

### A. Rule 8 Does Not Permit Joinder of a Group of Defendants Charged with Committing Separate Acts.

Rule 8(b), which governs the initial joinder of defendants, provides that an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). This Rule "provides the sole mechanism for joining criminal defendants for trial." *United States v. Chinchic*, 655 F.2d 547, 550 (4th Cir. 1981).[1] It has long been the law of this Circuit that when defendants are joined in violation of Rule 8(b), severance is "mandatory and not a matter of discretion." *United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978).

Under Rule 8(b), joinder is not permitted unless the defendants "are alleged to have participated in the same act or transaction or in the same series of acts or transactions." Fed. R. Crim. P. 8(b); *accord United States v. Santoni*, 585 F.2d 667,

---

[1] Joinder under Rule 8(a) is inapplicable here. Longstanding decisions of the Fourth Circuit hold that Rule 8(a) solely concerns joinder of offenses committed by a single defendant, and thus has no application when two or more defendants are involved. *See United States v. Chinchic*, 655 F.2d 547, 550 (4th Cir. 1981) ("Rule 8(b) provides the sole mechanism for joining criminal defendants for trial."); *United States v. Whitehead*, 539 F.2d 1023, 1025 (4th Cir. 1976) (holding that the "proper test for joinder of criminal defendants is not the Rule 8(a) test," rather, the "correct test is that stated in Rule 8(b)").

673 (4th Cir. 1978). Rule 8(a)'s broader consideration of whether the offenses "are of the same or similar character" is not relevant under Rule 8(b). *United States v. Whitehead*, 539 F.2d 1023, 1025 (4th Cir. 1976). Instead, when determining whether multiple acts satisfy Rule 8(b)'s "same series of acts or transactions" requirement, the court must look to whether those distinct acts are "so interconnected in time, place and manner as to constitute a common scheme or plan." *United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978).

In a seminal Fourth Circuit case *United States v. Chinchic*, for example, the court held that the joinder of two defendants who had worked together to identify jewelry stores to rob was improper under Rule 8(b). *United States v. Chinchic*, 655 F.2d 547, 550–51 (4th Cir. 1981). There, a group of defendants made multiple trips to Wilmington, NC, to scope out and rob jewelry stores. On the first trip, all of the defendants traveled together and participated in identifying multiple targets and in robbing one of the stores. On a second trip, some of the defendants returned to rob a second store that they had previously identified, but defendant Chinchic did not travel with them for the second robbery.

The Fourth Circuit held that "the two burglaries were separate and unrelated transactions." *Id.* at 551. The court emphasized that "nothing indicates that Chinchic took part in the planning or execution" of the second robbery. *Id.* at 550. And while the evidence indicated that all of the defendants identified the second store as a target, that was "insufficient to show that the two burglaries were 'so interconnected in time, place and manner that they constitute a common scheme or plan.'" *Id.* at 551 (quoting *United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978)). The court noted

that the government had not pursued a conspiracy theory of the crimes, *id.* at 551 n.3, and ultimately concluded that the mere fact that "there were two burglaries involving some of the same defendants," without more, "cannot operate as the basis for joinder," *id.* at 551.

For related reasons, common group membership such as membership in a gang is not enough, on its own, to support joinder. *See id.*; *accord United States v. Whitehead*, 539 F.2d 1023, 1023–24 (4th Cir. 1976); *United States v. Palacios*, 949 F. Supp. 198, 199 (S.D.N.Y. 1996) (joinder held improper because gang membership alone "does not transform the disparate criminal conduct into the same act" for the obvious reason that, if it did, "all members of the Latin Kings who committed crimes could be joined in a single indictment"), *aff'd sub nom. United States v. Fontanes*, 166 F.3d 1202 (2d Cir. 1998).

### B. Mr. Beasley Should Be Severed From the Defendants Named in Counts One, Two, Three, and Eight Because He Did Not Engage in the Same Act or Series of Acts.

Rule 8(b) does not permit joinder of Mr. Beasley with the Defendants named in Counts One, Two, Three, and Eight, all of whom are charged with committing separate acts. Thus, severance is "mandatory." *United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978).

#### 1. The Defendants Named in Counts One through Three Should Be Severed from Mr. Beasley.

In Counts One through Three, several Defendants, but not Mr. Beasley, are alleged to have murdered J.P., used a firearm in furtherance of that crime, and to have acted as accessories after the fact. Mr. Beasley is not connected whatsoever to these acts. They occurred at different times, in different places, and in different

manners from Mr. Beasley's charges. And the Indictment does not allege a conspiracy. Moreover, at both pretrial detention hearings, where the Government offered detailed evidence about Mr. Beasley, all of the Government's witnesses testified that they were not aware of any evidence connecting Mr. Beasley to other instances of criminal activity committed by the Hells Angels.

As with the defendants in *Chinchic*, the allegations in the Indictment and the proffered evidence here are "insufficient to show that the two [acts] were so interconnected in time, place and manner that they constitute a common scheme or plan." *Chinchic*, 655 F.2d at 551 (internal quotations omitted). Accordingly, severance is "mandatory." *Santoni*, 585 F.2d at 673.

> 2. *The Defendant Named in Count Eight Should be Severed from Mr. Beasley.*

In Count Eight, a single Defendant, Mr. Robarge, is alleged to have harassed an unnamed witness. Again, there is nothing to connect the acts of Mr. Robarge with the acts of Mr. Beasley. Mr. Beasley is not alleged to have participated in any of the acts described in Count Eight. They too occurred at different times, in different places, and in different manners. And, again, the Government does not allege a conspiracy. Pursuant to *Chinchic* and its progeny, severance is thus "mandatory." *Chinchic*, 655 F.2d at 551; *Santoni*, 585 F.2d at 673.

**C.  Under Rule 14, Mr. Beasley Should be Severed from the Defendants Named in Counts One, Two, Three, and Eight to Avoid Unduly Prejudicing His Right to a Fair Trial.**

Even if initial joinder of these Counts were somehow proper, which it is not, severance is still warranted under Rule 14 to avoid unduly prejudicing Mr. Beasley's right to a fair trial. As discussed above, Rule 14 allows for relief from joinder when

it can be shown that continued joinder—even if initially proper—would prejudice a defendant or the government. This Rule provides that "[i]f the joinder of offenses or defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

As just discussed, there is nothing to connect Mr. Beasley to any of the conduct covered by Counts One, Two, Three, and Eight. Mr. Beasley is not named in these Counts. None of the Defendants named in these four Counts are also named in a Count that names Mr. Beasley. The Indictment does not allege a conspiracy. All of the Government's witnesses, who have been investigating the Hells Angels for years, testified that they were not aware of any connection between Mr. Beasley and any other criminal activity.

Because Mr. Beasley was not involved in these acts, their highly inflammatory nature creates a serious threat of unfair prejudice. For over half a century, the Fourth Circuit has consistently maintained that the purpose of prohibiting "jointly indicting and trying different defendants for unconnected offenses" is to avoid "the danger that the jury might feel that the evidence against the one supported the charge against the other." *Ingram v. United States*, 272 F.2d 567, 570–71 (4th Cir. 1959). The Fourth Circuit describes this protection as a "fundamental procedural rule designed to prevent 'mass trials.'" *Id*. In light of this longstanding principle, it is the rule of the Fourth Circuit that when "multiple defendants are charged with offenses in no way connected, and are tried together, they are prejudiced by that very fact, and the trial judge has no discretion to deny relief." *Id*. at 570. That is particularly true here given

Case 5:24-cr-00289-M-KS    Document 278    Filed 12/16/24    Page 12 of 14

the highly inflammatory nature of the unrelated offenses—charges involving murder, firearms, and witness tampering.

As a practical matter, moreover, joining these Counts for trial has reduced benefit to judicial economy because each charged offense is distinct and will require different sets of witnesses and evidence.

Accordingly, the serious prejudice that Mr. Beasley faces at a joint trial outweighs the minimal burden on judicial resources that a separate trial entails. Severance of Mr. Beasley from the Defendants in these Counts is warranted.

## CONCLUSION

In light of the improper joinder and to avoid unwarranted prejudice to Mr. Beasley's speedy trial rights and his right to a fair trial, the Court should sever Mr. Beasley from all of his Co-Defendants.

This the 16th day of December, 2024.

/s/ Michael A. Goldsticker

Michael A. Goldsticker
NC State Bar No. 57617
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 1400
P.O. Box 389 (Raleigh, NC 27602-0389)
Raleigh, North Carolina 27601
Phone: (919) 828-0564 | Fax: (919) 834-4564
Email: michaelgoldsticker@parkerpoe.com

*CJA Appointed Counsel for Defendant*
*William Franklin Beasley*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF System which will automatically send notice of the same addressed to the following counsel of record:

Kelly L. Sandling
Robert J. Dodson
United States Attorney's Office - EDNC
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Email:     kelly.sandling@usdoj.gov
            robert.dodson@usdoj.gov

Alyssa Levey-Weinstein
DOJ-Crm
1301 New York Ave NW, Ste 700
Washington, DC 20005
Email:     alyssa.levey-weinstein@usdoj.gov

This the 16th day of December, 2024.

/s/ Michael A. Goldsticker
Michael A. Goldsticker
NC State Bar No. 57617
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 1400
P.O. Box 389 (Raleigh, NC 27602-0389)
Raleigh, North Carolina 27601
Phone: (919) 828-0564 | Fax: (919) 834-4564
Email: michaelgoldsticker@parkerpoe.com

*CJA Appointed Counsel for Defendant*
*William Franklin Beasley*